UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-1233 RHK
Criminal No. 02-361 RHK/RLE

| | | |
|---|---|---|
| SHANNON GEORGE WILSON, | ) | |
| | ) | |
| Petitioner, | ) | RESPONSE OF THE UNITED |
| | ) | STATES TO PETITIONER'S |
| v. | ) | MOTION TO VACATE OR |
| | ) | CORRECT SENTENCE |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## INTRODUCTION

The United States of America, by and through its attorneys, Rachel K. Paulose, United States Attorney for the District of Minnesota, and William H. Koch, Assistant United States Attorney, hereby files its response to Petitioner's Section 2255 motion to vacate or correct his sentence.[1]

## CASE SUMMARY AND PROCEDURAL HISTORY

Shannon Wilson was found in possession of firearms and ammunition on November 10, 2001, when a Minnesota conservation officer and other law enforcement officials made contact with Mr. Wilson during the execution of a search warrant at his remote trailer, in conjunction with their responding to a call to the Minnesota Department of Natural Resources Turn-in-Poachers (TIP) line reporting that Mr. Wilson was a felon-in-possession. When the officers made contact with Mr. Wilson, he was returning from hunting. During his interview, he told the officers about a shotgun inside his trailer and a rifle he had left in the woods prior to approaching the officers.

[1]While Mr. Wilson's motion is captioned "Pursuant to 28 U.S.C. § 2255, Petitioner Moves the Court to Vacate His Conviction and/or to Correct His Sentence," this section does not permit the Court to vacate his *conviction*. Section 2255 allows the Court under certain circumstances to only "vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

Mr. Wilson confessed to being a felon-in-possession, and acknowledged he knew this was against the law.

On July 29, 2003, pursuant to a plea agreement, Mr. Wilson pled guilty to illegally possessing the shotgun (which was in his trailer, and not being used during the hunt from which he was returning at the time of the search warrant). Mr. Wilson pled guilty to one of two counts; the related ammunition count was dismissed.[2]

At time of sentencing, Mr. Wilson attempted to reduce the punishment facing him by arguing that his prior convictions were not "violent felonies" and that, even if they were, they did not occur "on occasions different from one another," such that he could not be properly characterized as an "Armed Career Criminal" under Title 18, United States Code, Section 924(e)(1).[3]

Mr. Wilson's criminal record includes, but is not limited to, convictions for third-degree burglary, theft of an operable vehicle, second-degree assault, and terroristic threats. Mr. Wilson maintained that the first two felony convictions were not "violent felonies" and that the last two

---

[2]Mr. Wilson improperly characterizes the plea agreement as containing "a promise of a sentence of no more than 78 months." *See* Petitioner's Motion at 1. Instead, the plea agreement expressly calculated two sets of Guideline calculations – one if he were found to not be an Armed Career Criminal (resulting in a Guideline range of 77 - 96 months imprisonment), and a second if he were found to be an Armed Career Criminal (resulting in a Guideline range of 168 - 210 months). *See* "Plea Agreement and Sentencing Stipulations" at ¶¶ 7(g) and 8.

[3]As the Court will likely recall, the characterization of Mr. Wilson as an Armed Career Criminal was long discussed among the parties. It was nothing "NEW" as claimed in Mr. Wilson's current motion. Indeed, from the start of his prosecution, the Government informed defense counsel of its view regarding Mr. Wilson being an Armed Career Criminal. *See* December 19, 2002 letter from undersigned counsel to Andrea K. George (a true and correct copy is attached as Exhibit 1). Because of these early discussions about his proper status, Mr. Wilson brought an unusual motion to have the Court determine whether or not he was an Armed Career Criminal prior to his deciding to enter his plea. *See* "Defense Motion for Pre-plea Determination of Statutory Maximum Sentence." The Court properly refused to make that advisory determination.

felonies did not "occur on occasions different from one another." In short, he argued as a matter of law that third-degree burglary and theft of an operable vehicle are not violent felonies; and he argued that two different crimes occurring in two different counties, on three different dates, through different means, with different participants, that were independently complete crimes and were not formally consolidated for sentencing did not – as a matter of law – occur on occasions different than one another.

This Court rejected Mr. Wilson's position and found him to be an Armed Career Criminal. The Court then sentenced Mr. Wilson to 180 months, the mandatory minimum sentence.

Mr. Wilson appealed his sentence. In essence, he argued to the Eighth Circuit that his Sixth Amendment rights were violated by the Court's determination that he was an Armed Career Criminal without a corresponding jury finding. The Eighth Circuit affirmed. *United States v. Shannon George Wilson*, 406 F.3d 1074 (8th Cir. 2005). As the Eighth Circuit noted, Mr. Wilson was sentenced pursuant to a statutory mandatory minimum, and his sentence, therefore, did not implicate *Booker v. United States*, 543 U.S. 220 (2005). *Wilson*, 406 F.3d at 1075 (citing *United States v. Painter*, 400 F.3d 1111 (8th Cir. 2005)). The appellate court then reiterated its earlier determinations that the fact of a prior conviction need not be submitted to a jury since it is a sentencing factor. *Id.* (citations omitted). The Eighth Circuit went on to reiterate that the nature of a prior conviction is treated the same as the fact of a prior conviction. *Id.* (citations omitted).

Through this challenge to his sentence, Mr. Wilson attempts to relitigate the Sixth Amendment challenge to his sentence, and to introduce a Second Amendment challenge. Neither argument is persuasive.

## LEGAL AND HISTORICAL BACKGROUND

The Supreme Court has not held, clearly and definitively, that the Second Amendment either protects, or does not protect, an individual's right to keep and bear firearms.

In *United States v. Miller*, 307 U.S. 174 (1939), the Court reversed a lower's courts dismissal of an indictment under the former National Firearms Act for an alleged violation of the Second Amendment. The Court said that absent evidence that possession and use of the short-barrel shotgun in that case had a reasonable relationship to the preservation or efficiency of a well regulated militia, the Court could not say that it was among the arms protected by the Second Amendment. *Miller*, 307 U.S. at 178. The Court said that the Second Amendment must be interpreted and applied in light of the militia-related purposes described in the Second Amendment, and then described the purpose and role of the "militia" at the time of the Country's genesis. *Id*. at 178-79.

The Supreme Court has, on rare occasions, mentioned its Second Amendment analysis since *Miller*. In *Lewis v. United States*, 445 U.S. 55, 65 (1980), the Court upheld a conviction for possession of a firearm by a convicted felon under the former 18 U.S.C. App. § 1202(a)(1). The *Lewis* court cited *Miller* for proposition that "the Second Amendment guarantees no right to keep and bear a firearm that does not have some reasonable relationship to the preservation or efficiency of a well regulated militia." *Lewis*, 445 U.S. at 65 n.8. In *Printz v. United States*, 521 U.S. 898 (1997), a divided Supreme Court held that the Brady Act imposed an unconstitutional obligation on state law enforcement officers to complete the federally mandated background checks. That finding, however, was based upon the Tenth Amendment, and not the Second Amendment. The Second Amendment was mentioned in Justice Thomas's concurring opinion, in which he noted that the Court had not focused on the Second Amendment since *Miller*.

Since *Miller*, the lower federal courts have rejected Second Amendment challenges to statutes and convictions involving firearms. Prior to 2001, the courts of appeal have generally held that the Second Amendment protects no individual rights at all – thus, individual defendants had no standing to assert the right – or that the right contained within the Second Amendment had to be related to a well regulated militia. *See United States v. Emerson*, 270 F.3d 203, 218-20 (5th Cir. 2001) (collecting cases).[4] Other courts rejected the constitutional challenge saying particular firearms were not protected "Arms" or that, even if there were an individual right, the law imposed a valid disability for, say, violent felons. Since 2001, the appellate courts have generally referenced *Emerson*, but then return to their traditional analysis in isolation or combine it with the *Emerson* analysis to note that, under either approach, the Second Amendment would not bar the firearm regulations found in 18 U.S.C. § 922. Indeed, while the courts of appeals are in disagreement concerning the abstract question whether the Amendment protects an individual right to bear arms for reasons unrelated to militia service, no circuit conflict exists on the constitutionality of any firearms prohibition contained within 18 U.S.C. § 922.

In October 2001, the Fifth Circuit held that § 922(g)(8), prohibiting possession of firearms by individuals subject to certain domestic relations restraining orders, was constitutional. *Emerson*, 270 F.3d at 260-65. In reaching that conclusion, the two-judge majority decided the defendant had a protected individual right under the Second Amendment to keep and bear arms, but concluded the statute was a reasonable and narrowly tailored exception to that right. *Id*. The court explained that

---

[4] In *Emerson*, the district court dismissed an indictment, holding that § 922(g)(8) violated the Second and Fifth Amendments of the Constitution. The Fifth Circuit reversed and remanded the case for further proceedings.

the individual right to bear arms protected by the Second Amendment is subject to "limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to keep and bear their private arms as historically understood in this country." *Id*. at 261. In a concurring opinion, Judge Parker similarly upheld the constitutionality of § 922(g)(8), but he said the majority's extensive analysis of the Second Amendment and its conclusion of an individual right was merely "interesting dicta" since the conviction would have been upheld under several different constructions of the Second Amendment. *Id*. at 272-74 (Parker, C.J., concurring).

*Emerson* was the first appellate court decision directly holding that the Second Amendment conferred an individual right to keep and bear arms, unrelated to any relationship with a well regulated militia. The Supreme Court, adopting the Government's recommendation, denied *certioari*. *United States v. Emerson*, 536 U.S. 907 (2002).

No other court of appeals has joined the Fifth Circuit in recognizing an individual right to keep and bear arms unrelated to a well regulated militia. The appellate courts considering the issue have generally reaffirmed their earlier holdings that there is no individual right, or have coupled that finding with a determination that, assuming there is an individual right as announced in *Emerson*, § 922 would still be constitutional. *See*, *e.g.*, *United States v Lippman*, 369 F.3d 1039, 1043-44 (8th Cir. 2004); *United States v. Wilson*, 315 F.3d 972, 973-74 & n.3 (8th Cir. 2003)[5]; *United States v. Parker*, 362 F.3d 1279, 1282-84 (10th Cir. 2004); *United States v. Price*, 328 F.3d 958, 961-62 (7th

[5]Although Mr. Wilson has his own appellate decision, this *Wilson* case is a different defendant – although the Second Amendment challenge is the same. Both Wilsons challenged the constitutionality of the same provision (§ 922(g)(1)). The outcome here should be like that in *Wilson*, the restriction should be held constitutional – even if this Court were to analyze the situation under the *Emerson* individual-right standard.

Cir. 2003). One circuit, the Ninth Circuit, has rejected the *Emerson* analysis. *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2003) (upholding California's Assault Weapons Control Act from a Second Amendment challenge).[6]

In response to *Emerson*, former Attorney General John Ashcroft issued a Memorandum on November 9, 2001, endorsing the *Emerson* majority's analysis of the Second Amendment. Memorandum for United States Attorneys from the Attorney General, Re: United States v. Emerson (Nov. 9, 2001); http://usdoj.gov/ag/readingroom/emerson.htm, reprinted in Brief for the United States in Opposition, app., *Emerson v. United States*, 536 U.S. 907 (2002) (denying *certiorari).* In the memo, the Attorney General endorsed the view that the Second Amendment protects a "'right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms"' but allows for "reasonable restrictions" designed "to prevent unfit persons from possessing firearms or to restrict possession of firearms particularly suited to criminal misuse." *Id*. (quoting *Emerson*, 270 F.3d at 260).

Since *Emerson* and the Attorney General's memo, the Department of Justice has stressed that the Second Amendment protects such acts of firearm possession as are reasonably related to the preservation or efficiency of the militia, and

> the Second Amendment more broadly protects the rights of individuals, including persons who are not members of any militia or engaged in active military service or

---

[6]Judge Magill, from the Eighth Circuit, was the third member on that panel and concluded in a concurring opinion that the majority's attack on *Emerson* was unnecessary since other binding Ninth Circuit precedent showed individuals lacked standing to assert a Second Amendment violation, the amendment protects only a collective right, and such rights are only enforceable by the states. *Silveira*, 312 F.3d at 1093-94 (Magill, C.J., concurring). Judge Magill's assessment was later adopted by a different Ninth Circuit panel. *Nordyke v. King*, 319 F.3d 1185 (9th Cir. 2003).

> training, to possess and bear their own firearms, subject to reasonable restrictions designed to prevent possession by unfit persons or to restrict the possession of types of firearms that are particularly suited to criminal misuse. Brief for the United States in Opposition to Petition for *Writ of Certioari*, *Emerson*, No. 01-8780 (May 2002), at 19 n. 3.[7]

**ARGUMENT**

Mr. Wilson claims his sentence should be vacated or corrected because: (1) he was improperly sentenced by the Court as an Armed Career Criminal, and (2) a conviction under Title 18, United States Code, Section 922(g) violates the Second Amendment. The Court's determination that Mr. Wilson was an Armed Career Criminal was appropriate, and his conviction for being a felon in possession of a firearm is constitutional. His motion should be denied.

**I. The Court Properly Determined Petitioner to be an Armed Career Criminal.**

Mr. Wilson contends his Sixth Amendment right to a trial by jury was violated through judicial fact-finding regarding the nature of his prior conviction for second-degree manslaughter. This contention is like many that have been raised since *Booker*. Similar to countless other arguments brought in this context, Mr. Wilson argues, in effect, that his case is not controlled by *United States v. Almendarez-Torres*, 523 U.S. 224 (1998). His argument has been expressly rejected by the Eighth Circuit:

> Wilson's other Sixth Amendment argument states that the determinations of whether his prior felonies were violent offenses and whether they occurred on separate occasions should have been made by a jury under the beyond a reasonable doubt standard. The fact of a prior conviction need not be submitted to a jury or proved beyond a reasonable doubt. A prior felony conviction is a sentencing factor for the court rather than a fact for the jury. The Supreme Court's recent sentencing cases have not altered this principle. *Wilson*, 406 F.3d at 1075 (citations omitted).

This motion is an effort by Mr. Wilson to relitigate an issue already addressed by the Eighth Circuit.

---

[7] *See* http://www.usdoj.gov/osg/briefs/2001/responses/2001-8780.resp.html.

There has been no change in the law or facts that would warrant any re-examination of the issue.

Further, there is later Eighth Circuit precedent that a judicial finding regarding the nature of a prior conviction does not violate the Sixth Amendment. *United States v. Torres-Alvarado*, 416 F.3d 808, 809-10 (8th Cir. 2005) (statutory "aggravated felony" determination may be made by the judge). This determination is consistent with earlier Eighth Circuit precedent. *See United States v. Perez-Perez,* 337 F.3d 990, 997 (8th Cir. 2003) (rejecting *Apprendi* challenge to judicial determination of "aggravated felony"); *United States v. Rodriguez-Arreola*, 313 F.3d 1064, 1068 (8th Cir. 2003) (same). As the Court of Appeals has stated,

> the Supreme Court reaffirmed the *Almendarez-Torres* principle in *Booker* . . . noting that the fact of a prior conviction need not be admitted by the defendant or proved to the jury beyond a reasonable doubt. . . .we previously have rejected the argument that the nature of a prior conviction is to be treated differently from the fact of a prior conviction. . . . Once the sentencing court determines that a prior conviction exists, the characterization of that conviction . . . is a legal matter for the court. *United States v. Patterson*, 412 F.3d 1011, 1016 (8th Cir. 2005) (citations omitted).

And, in March of this year, the Eighth Circuit pronounced its most recent incantation of this determination by finding "the Sixth Amendment does not prevent a district court from making findings about the fact and nature of a defendant's prior convictions." *United States v. Warford*, 412 F.3d 836, 845 (8th Cir. 2006).

There is no basis for Mr. Wilson's Sixth Amendment challenge – either in his earlier direct appeal of his conviction or in this collateral attack on his sentence – his motion should be denied.

## II. The Firearms Regulation Found at 18 U.S.C. §922(g)(1) Does Not Violate the Second Amendment.

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed. *U.S. Const., amend. II.*

Citing to these 27 words, Mr. Wilson presents an apparent boilerplate recitation of various cases and other claimed sources to challenge the constitutionality of the firearm offenses identified in Title 18. While he does properly note that these restrictions have been found to be constitutional by the courts, Pet. Br. at 7, he limits his citations to only two Eighth Circuit cases; every circuit has addressed the issue and found them to be constitutional. While Mr. Wilson's resulting Second Amendment presentation may be academically interesting, his conclusion is flawed.[8] He borrows heavily from the Fifth Circuit's decision in *Emerson*, in which the Fifth Circuit broke from all of its sister circuits in finding that the Second Amendment confers a right to individual citizens. *United States v. Emerson*, 270 F.3d 203 (5ht Cir. 2001). But he misapplies it. And he fails to acknowledge that the result in this case would be no different from that in *Emerson* - the statute will be upheld as constitutional.

Like the rest of the circuits, the Eighth Circuit has held that the Second Amendment confers a collective right related to a "well regulated militia." *See, e.g., United States v. Pfeifer*, 371 F.3d 430, 438 (8th Cir. 2004) ("We have held that the Second Amendment does not guarantee the right to possess a firearm unless the firearm has some reasonable relationship to the maintenance of a militia.") Even if the Eighth Circuit were to find an individual right to bear arms, Mr. Wilson cannot show that §922(g)(1) was not sufficiently related to a compelling governmental interest.

---

[8]Mr. Wilson's factual claims are also misplaced. His claim that he possessed the shotgun for hunting purposes is wrong – he was hunting with an antique rifle he hid in the woods when he saw the officers searching his trailer (for which he was not charged), the shotgun was resting in his trailer as he returned from hunting. Additionally, rather than being a "non-violent, harmless, and trustworthy Citizen[] of the United States," Pet. Br. at 11, Mr. Wilson is a lifelong felon. His convictions are many, and they are serious. He is an Armed Career Criminal, not an innocent defender of American principles.

**A. <u>The Regulation Found in 18 U.S.C. § 922(g)(1) is Reasonably Related to a Compelling Government Interest</u>.**

The existence of an individual right to keep and bear arms does not mean that reasonable restrictions cannot be imposed to prevent unfit persons from possessing firearms or to restrict possession of firearms particularly suited for criminal misuse. "Congress may prohibit those who pose a risk to society, like felons, from exercising the right to bear arms." *United States v. Patterson*, 431 F.3d 832, 835 (5th Cir. 2005) (citing *Emerson*; rejecting Second Amendment challenge to § 922(g)(3)); *United States v. Darrington*, 351 F.3d 632, 633-34 (5th Cir. 2003) (citing *Emerson*, rejecting Second Amendment challenge to § 922(g)(1); Section 922(g)(1) does not violate the Second Amendment.").

> It is not inconsistent with the Second Amendment to limit the ability of convicted felons to keep and possess firearms. Irrespective of whether his offense was violent in nature, a felon has shown manifest disregard for the rights of others. He may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens. *See* [*Emerson*] (noting that "it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms"). Accordingly, § 922(g)(1) represents a limited and narrowly tailored exception to the freedom to possess firearms, reasonable in its purposes and consistent with the right to bear arms protected under the Second Amendment. Everist's constitutional challenge to § 922(g)(1) fails. *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) (footnote omitted).

Just as *Emerson* had noted, and *Darrington* and *Everist* explicitly held, felons may be constitutionally prohibited from keeping and bearing firearms.

**B. <u>Well-Entrenched Precedent in the Eighth Circuit Prevents this Court from Finding 18 U.S.C. § 922(g)(1) Unconstitutional</u>.**

In addition to the above analysis, upon which the Government primarily relies, as a practical matter, this Court cannot counter the overriding precedent in the Eighth Circuit that § 922 is constitutional – even if under a different theory.

In an unbroken line of cases starting with *United States v. Synnes*, 438 F.2d 764, 772 (8th Cir. 1971), through at least *Pfeifer*, the Eighth Circuit has held that the Second Amendment protects the right to bear arms when it is reasonably related to the maintenance of a well regulated militia. *See, e.g., Pfeifer*, 371 F.3d 430 at 438; *Lippman*, 369 F.3d at 1043-44; *Wilson*, 315 F.3d at 973-74 (upholding constitutionality of §922(g)(1); declining to reconsider circuit precedent in light of *Emerson*); *United States v. Lewis*, 236 F.3d 948, 950 (8th Cir. 2001); *United States v. Smith*, 171 F.3d 617, 624 (8th Cir. 1999); *United States v. Farrell*, 69 F.3d 891, 894 (8th Cir. 1995); *United States v. Hale*, 978 F.2d 1016, 1020 (8th Cir. 1992) (adopting a sophisticated collective rights model, in which there is an individual right only if in relation to a well-organized state-supported militia)[9]; *United States v. Nelsen*, 859 F.2d 1318, 1320 (8th Cir. 1988); *Cody v. United States*, 460 F.2d 34, 37 (8th Cir. 1972). Since the defendant has not shown, nor has he even alleged, that his ammunition possession was reasonably related to a well regulated militia, the Eighth Circuit has said his constitutional challenge must fail.

**Conclusion**

The United States respectfully asks the Court to deny Mr. Wilson's motion.

Dated: July 14, 2006

Respectfully submitted,

RACHEL K. PAULOSE
United States Attorney

s/ William H. Koch

BY: WILLIAM H. KOCH
Assistant U.S. Attorney

---

[9]This approach seems to have been first articulated by the First Circuit 50 years earlier, in 1942, shortly after the Supreme Court issued its decision in *Miller*. *Cases v. United States*, 131 F.2d 916 (1st Cir. 1942).